IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FUZE, INC., | : | |
| Plaintiff, | : | Case No. 21-cv-2132 |
| -against- | : | |
| SCHWEIGER DERMATOLOGY, PLLC, | : | **COMPLAINT** |
| Defendant. | : | |
| | : | |

Plaintiff Fuze, Inc. (Fuze), as and for its complaint against defendant Schweiger Dermatology, PLLC (Schweiger), states:

## NATURE OF THE ACTION

1. This is an action for breach of contract arising out of a three-year service contract for a cloud-based communication platform between Fuze and Schweiger. Schweiger breached the contract by failing to pay the charges itemized in periodic invoices rendered by Fuze to Schweiger, which were not legitimately disputed. As a result of the breach, Fuze has suffered damages of not less than $940,127.40, representing the minimum monthly charges over the 36-month term of the parties' agreement.

## THE PARTIES

2. Plaintiff Fuze is a Delaware Corporation with its principal place of business in Boston, Massachusetts. Fuze provides a cloud-based communication platform, which allows its clients to route and host calls, chats, faxes, messages, video conferences, and other telecommunications needs.

3. Defendant Schweiger is a professional service limited liability company formed under the laws of the State of New York. Schweiger is a licensed medical group, which provides

its patients with dermatological services. On information and belief, its sole member is Eric S. Schweiger, M.D., who resides and works in New York State. Schweiger maintains a principal corporate office in Long Island City, New York, and has multiple offices in New York, New Jersey, and Connecticut.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of Delaware and Massachusetts, under 28 U.S.C. § 1332(c)(1). On information and belief, Defendant is a citizen of New York, based on the citizenship of its member, Dr. Eric S. Schweiger. The amount in controversy exceeds the sum of seventy-five thousand dollars, exclusive of interest and costs.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendant maintains a principal office in the District.

## FACTS

6. On January 2, 2020, Fuze and Schweiger entered into a Master Services Agreement (the "MSA"). A true copy of the MSA is attached hereto as Exhibit A.

7. On January 6, 2020, pursuant to the MSA, the parties executed an Order Form (the "Order"), which itemizes the products and services ordered by Schweiger, as well as the prices, and terms specific to this relationship. A true copy of the Order is attached hereto as Exhibit B. The MSA and the Order are, collectively, the "Agreement."

8. Under the Order, Schweiger agreed to acquire and Fuze agreed to provide communication equipment (*e.g.*, polycom phones); implementation, training and support services; and cloud-based voice products and related services (*e.g.*, toll free numbers, fax to email service). The "Initial Order Term" under the Order was 36 months, with monthly

automatic renewals (each a "Renewal Term"). (The Initial Order Term with any Renewal Terms are together defined as "Order Term.").

9. Under the Order, Schweiger agreed to pay to Fuze a monthly charge set at the greater of (x) the "Actual Monthly Recurring Charges", based on actual usage and the agreed rates, and (y) the "Minimum Monthly Recurring Charges," which was fixed at $26,114.65 per month. The parties agreed that the first monthly charge of $26,114.65 would begin "in month one (1) of the Order Term," which commenced on the "Order Effective Date," defined as the "last date signed below": *i.e.*, January 6, 2020. Therefore, at a minimum, Schweiger agreed to pay Fuze $940,127.40 over 36 months ($26,114.65 x 36).

10. Even though it would take several months (or longer) to implement the system in full, the parties agreed that Schweiger would begin making monthly payments from the inception of the Agreement. In exchange for this payment structure, Fuze absorbed the up-front charges for equipment and implementation.

11. Under the MSA, Schweiger agreed to pay Fuze in accordance with the requirements of Exhibit 1 to the MSA, which can be summarized as follows. Fuze was to provide Schweiger with monthly invoices. On receipt, Schweiger agreed to pay the invoiced amount within 30 days after the invoice date, the "Due Date." If Schweiger disputed a charge, it agreed to "provide Fuze with written notice of disputed charge(s) by the Due Date, including an explanation of the basis of the dispute." If Schweiger failed to make timely payments, Fuze had the right to impose a 1% per month interest fee and to suspend services.

12. As discussed between the parties, Fuze would prepare for the implementation through the end of March 2020, which was when Fuze expected to begin rolling out the products and services. For a timely and successful implementation, Schweiger was required to provide

data to Fuze in the form of "cut sheets," which Fuze would then use to design the implementation.

13. After some delays due to the Covid-19 pandemic, Fuze began the implementation in April 2020.

14. As with any technology implementation, there were bugs. Fuze immediately addressed problems that occurred. But the biggest hurdle to overcome during the implementation was Schweiger's failure to provide accurate and timely data to Fuze in the cut-sheets. If a customer provides inaccurate data in the cut sheets, the system will have errors and that was an on-going issue for Schweiger.

15. Each month, beginning in January 2020, Fuze rendered a monthly invoice to Schweiger. The first invoice was dated January 17, 2020 and required payment by February 12, 2020. Schweiger did not dispute that invoice prior to the Due Date, as required by the MSA, but did not pay it.

16. Each month thereafter, March, April, May, June, and July, 2020, Fuze rendered monthly invoices to Schweiger. Schweiger raised no timely and legitimate dispute under the MSA, but also failed to pay. During these months, as Schweiger knew, Fuze was supplying equipment to Schweiger and providing implementation services, and Schweiger was using the platform.

17. During two conference calls in August 2020, Schweiger communicated to Fuze's implementation team that it desired to terminate the Agreement and expressed frustration with the roll out of the platform. Following the second call, Fuze's implementation team advised Schweiger that it would halt the project implementation activities and that they had notified Fuze's legal department to address "next steps."

18. In seeking to terminate the Agreement early, Schweiger did not follow the contractual procedures.

19. Under the MSA, either party had the right to terminate the agreement "upon thirty (30) days' prior written notice to the other Party if the other Party materially breaches the terms of this Agreement [the MSA], such Order, or such SOW, respectively, and fails to cure the breach within such thirty (30) day period." The MSA also permitted an early termination if a counterparty went out of business.

20. The MSA also has a specific provision for "notices." It provides:

> NOTICES. All notices and communications under this Agreement shall be in writing and given by personal delivery, recognized national overnight courier service, or by United States registered or certified mail, return receipt requested, in each case, addressed to the Parties as follows (or to such other addresses as the Parties may request in writing by notice given pursuant to this Section): to Fuze at Fuze, Inc., Attn: Legal Department, 2 Copley Place, Suite 7000, Boston, MA 02116 USA; and to Customer at the Customer address first set forth above. Notice shall be deemed given upon receipt.

21. Schweiger did not then or ever provide Fuze notice of termination in accordance with the MSA, and never gave Fuze the chance to cure any material breach, even had a breach occurred (which was not the case).

22. Following the conference calls, Schweiger and Fuze communicated about Schweiger's request to terminate. But Schweiger was unwilling to compensate Fuze for the early termination, including for the amounts already invoiced—which were all unpaid—the costs of implementation (including equipment), and the loss of future revenues.

23. On December 21, 2020, Fuze's general counsel responded formally to Schweiger's request to terminate. In the letter, Fuze offered to complete the implementation. But if Schweiger was not interested in restarting the project, Fuze would permit an early termination, if Schweiger paid the past unpaid invoices and an early termination fee.

24. Schweiger did not respond to the December 21, 2020 letter. Yet, it continued to utilize that portion of the Fuze platform that had been rolled out. Schweiger still made no payments.

25. Schweiger's failure to pay the invoiced amounts, which Fuze rendered in accordance with the MSA and the Order, and its improper termination (while still utilizing Fuze's platform), constitutes a material breach of the Agreement.

**COUNT I**
**BREACH OF CONTRACT**

26. Fuze repeats and realleges the above allegations.

27. The MSA and the Order, together, the Agreement, constituted a valid and binding contract between Fuze and Schweiger.

28. Fuze performed its obligations under the Agreement, including providing implementation services, equipment, and support.

29. Schweiger used the fax and voice services provided by Fuze, incurring itemized usage charges (shown on the periodic invoices) from April 2020 through the end of 2020 and into 2021.

30. Schweiger used the equipment that Fuze provided without charge, per the arrangement described in paragraph 10 above.

31. Schweiger breached the Agreement by failing to pay the invoices rendered by Fuze and by improperly terminating the Agreement, without providing notice and an opportunity to cure.

32. Fuze has suffered damages because of Schweiger's breaches. Fuze's damages will be determined at trial but are, in no event, less than $940,127.40, which represents the product of the minimum monthly charge ($26,114.65) over the 36-month minimum Term. In fact, the

actual damages are higher because, during some months, the charges for Schweiger's actual usage of the Fuze platform exceeded the monthly minimum.

33. Fuze is also entitled to recover interest on the unpaid balance of one percent per month from the date of breach through the date of judgment.

WHEREFORE, Plaintiff demands judgment against Defendant awarding:

1. Compensatory damages in an amount to be determined at trial, but not less than $940,127.40;
2. Prejudgment interest from the date of breach at one percent per month;
3. Costs and disbursements incurred in this action and such other and further relief as is just and proper.

Dated: New York, New York
April 19, 2021

SOLOMON & CRAMER LLP
*Attorneys for Plaintiff Fuze, Inc.*

By: /s/Andrew T. Solomon
Andrew T. Solomon
asolomon@solomoncramer.com
Jennifer G. Cramer
jcramer@solomoncramer.com

25 West 39th Street, 7th Floor
New York, New York 10018
(t) (212) 884-9102
(f) (516) 368-3896